UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KARAM HARRAN,

                    Petitioner,

          v.

JULIO HERNANDEZ, *et al.*,

                    Respondents,

CASE NO. 2:26-cv-02004-GJL

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

Petitioner Karam Harran ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at ¶ 9; Dkt. 5 at 1, 7. On June 8, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or, in the alternative, a bond hearing where the Government must prove that continued detention is justified by clear and convincing evidence.[1] Dkt. 1 at ¶ 8.

Respondents to the Petition include Markwayne Mullin (Secretary of the United States Department of Homeland Security), Todd Blanche (Acting Attorney General of the United

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 3.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

States), Bruce Scott (Warden of the NWIPC), Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), and the U.S. Department of Homeland Security ("DHS") (collectively "Respondents").

On June 9, 2026, the Court ordered Respondents to show cause why a writ of habeas corpus should not be granted. Dkt. 2. The Petition has been fully briefed. Dkts. 1, 5, 8.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) and **ORDERS** Respondents to provide an individualized bond hearing as set forth in the conclusion below.

## I.    FACTUAL BACKGROUND

Petitioner is a citizen of Jordan who was apprehended by immigration authorities and taken into DHS custody on December 22, 2024, after entering the country to seek asylum. Dkt. 1 at ¶ 22–24; Dkt. 5 at 4. Petitioner was originally issued a Notice and Order of Expedited Removal, but the expedited removal order was vacated on February 7, 2025, after U.S. Citizenship and Immigration Services ("USCIS") determined Petitioner demonstrated a credible fear of removal to Jordan. Dkt. 1 at ¶ 25; Dkt. 6-2 at 2; Dkt. 6-3 at 2. That same day, Petitioner was served with a Notice to Appear ("NTA"), alleging he was subject to removal under Sections 212(a)(7)(A)(i)(l) and 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Dkt. 1 ¶ 26; Dkt. 6-3 at 2.

On March 5, 2025, Petitioner filed his application for asylum and for withholding of removal with the Immigration Court. Dkt. 1 at ¶ 27; Dkt. 7 at ¶ 12. On August 5, 2025, the Immigration Judge ("IJ") issued a written decision granting withholding of removal but denying asylum, finding that Petitioner had not rebutted the presumption of ineligibility established by

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

the Circumvention of Lawful Pathways ("CLP") Rule and reasoning that she would have granted Petitioner's application for asylum but for the CLP Rule. Dkt. 1 at ¶¶ 29, 31; Dkt. 5 at 5.

Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on August 27, 2025. Dkt. 7 at ¶ 12. On May 20, 2026, the BIA affirmed the IJ's findings and dismissed Petitioner's appeal. Dkt. 1 at ¶ 34. On May 29, 2026, Petitioner filed a Petition for Review with the U.S. Court of Appeals for the Ninth Circuit. *Id.*; Dkt. 7 at ¶ 17. A stay of removal is currently in effect pending further order from the Ninth Circuit. Dkt. 1 at ¶ 37; Dkt. 7 at ¶ 18. Petitioner has now been detained without a bond hearing for more than eighteen months and remains at the NWIPC. Dkt. 1 at ¶¶ 16, 38.

## II.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, a habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

Petitioner is detained under 8 U.S.C. § 1225(b). Dkt. 5 at 5; Dkt. 8 at 7. Title 8 of the United States Code §§ 1225, 1226, and 1231 governs immigration detention. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary,

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1225 applies to "applicants for admission"—noncitizens[2] who "arrive[ ] in the United States" or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). The *Jennings* Court found that Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*

Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order. 8 U.S.C. § 1225(b)(1)(A)(i). But, if a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3. The

---

[2] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

statute does not impose "any limit on the length of detention" pending a decision on the asylum application. *Jennings*, 583 U.S. at 296–301.

Section 1231 governs the detention and release of noncitizens who have been ordered removed. During the "removal period," which typically lasts 90 days, detention is mandatory. 8 U.S.C. § 1231(a)(2). If ICE is unable to remove the noncitizen during the removal period, DHS may continue to detain certain noncitizens specified in the statute or release them under an order of supervision. 8 U.S.C. § 1231(a)(6). Section 1231(a)(6), however, does not authorize indefinite detention. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In addition, the Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011).

Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Consequently, "district courts have grappled with how to address due process challenges to prolonged mandatory detention[.]" *Id.* And, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (cleaned up).

In assessing the constitutionality of prolonged mandatory detention, the Court in *Banda* declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07. Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

detainee; (5) delays in the removal proceeding caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 853–59 (D. Minn. 2019)). Courts in this District have now adopted the "*Banda* test" to assess when detention violates due process. *See, e.g.*, *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, at *4–7 (W.D. Wash. Dec. 5, 2025); *Belqasim v. Hermosillo*, No. 2:25-cv-1282-LK, 2025 WL 3466971, at *7–10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Maliwa v. Scott*, No. 2:25-cv-0788-TMC, 2025 WL 2256711, at *3–4 (W.D. Wash. Aug. 7, 2025); *Hong v. Mayorkas*, No. 2:20-cv-1784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).

The Respondents acknowledge that courts in this District analyze this issue using the *Banda* multi-factor test (Dkt. 5 at 6), and the Court will likewise apply the *Banda* test in determining if Respondents have met their burden of proving that Petitioner's continued detention without a bond hearing is justified.

**A.    The *Banda* Factors**

    1.    Total Length of Detention

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

In the wake of *Banda*, courts in the Western District of Washington have considered a range of periods that favor the detainee. *Ashemuke v. ICE Field Off. Dir.*, No. 2:23-cv-1592-RSL, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (eleven months); *Rahman v. Garland*, No. 2:24-cv-02132-JHC, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom*; *Anisur R. v. Garland*, 2025 WL 1919252 (W.D. Wash. July 11, 2025) (twelve months); *Murillo-Chavez v. Garland*, No. 2:22-cv-303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (nineteen months); *Doe v. Bostock*, No. 2:24-cv-0326-JLR, 2024 WL 3291033, at *10 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (fifteen months); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 929–30 (W.D. Wash. 2020) (eighteen months).

Here, Petitioner has been detained for more than eighteen months. Dkt. 8 at 1. Respondents "acknowledge that Petitioner's detention has become prolonged" and "this factor likely favors Petitioner." Dkt. 5 at 7 (citing *Hong v. Mayorkas*, No. 2:20-cv-1784, 2021 WL 8016749, at *5 (W.D. Wash. June 8, 2021), *report and recommendation adopted*, 2022 WL 1078627 (W.D. Wash. Apr. 11, 2022)). The Court agrees and finds the first *Banda* factor weighs in favor of Petitioner.

2.    Likely Duration of Future Detention

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. at 859). In *Banda*, for example, the Court noted that the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

petitioner had recently filed an appeal of a removal order with the BIA. *Id.* As the court explained, if the BIA were to affirm the removal order, the petitioner could seek review in the Ninth Circuit. *Id.* That process, the court found, might "take up to two years or longer." *Id.* (citation omitted). Thus, the *Banda* court found that the factor favored granting the petitioner a bond hearing. *Id.*; *see also Hong*, 2022 WL 1078627, at *7 (noting that appeals in the Ninth Circuit typically pend for twelve to twenty months before argument and then an additional three months to a year before decision, and finding the factor favored petitioner).

Respondents argue that "this Court should find this factor to be neutral" because any estimate of future detention would be speculative. Dkt. 5 at 7. However, as previously stated, on May 29, 2026, Petitioner filed a Petition for Review with the U.S. Court of Appeals for the Ninth Circuit. Dkt. 1 at ¶ 34; Dkt. 7 at ¶ 17. It is therefore likely that Petitioner will face additional time in custody. *See Garcia Puron v. Hernandez*, No. 2:26-CV-01428-TLF, 2026 WL 1660337, at *4 (W.D. Wash. June 9, 2026) ("[I]t can take approximately 6 to 12 months from the date of the notice of appeal to oral argument and, following argument, most cases take three months to a year for the Court of Appeals to decide the case."); *Djelassi*, 434 F. Supp. 3d at 931 (reasoning the petition for review process may take up to two years or longer and finding the length of appeal favored the petitioner); *see also Murillo-Chavez*, 2022 WL 16555994, at *5; *Leaupepetele v. ICE Field Off. Dir.*, No. 2:21-CV-961-RJB, 2021 WL 5450790, at *5 (W.D. Wash. Nov. 4, 2021), *report and recommendation adopted*, 2021 WL 5447918 (W.D. Wash. Nov. 22, 2021). The Court therefore finds this second *Banda* factor weighs in favor of Petitioner. *See Banda*, 385 F. Supp. 3d at 1119 (finding the length of appeal favored the petitioner); *Hong*, 2022 WL 1078627, at *7 (same).

//

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

### 3.      Conditions of Detention

Next, the Court considers the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6; *see also Amhirra v. Warden*, No. 2:25-cv-1376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025); *Toktosunov*, 2025 WL 3492858, at *5; *Rahman*, 2025 WL 1920341, at *4 (citing cases).

Petitioner asserts that he personally experiences restricted access to the outdoors, inadequate medical care, poor quality nutrition, and restricted access to practice his religion. *See* Dkt. 1-2. Respondents do not dispute Petitioner's assertions. Dkt. 5 at 7. Thus, the Court finds the third *Banda* factor also favors Petitioner.

### 4.      Delays in Removal Proceedings (by Petitioner and Respondent)

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the Government, respectively. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 2:18-cv-1669-RAJ, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.*

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

With respect to the Government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable…Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Here, Respondents assert that "there is no evidence that Petitioner has intentionally caused any delay[,]" and "this [fourth] factor likely favors Petitioner." Dkt. 5 at 7. The Court agrees.

Likewise, there is no evidence to suggest the Government has engaged in deliberate delay tactics. However, Petitioner identified, and Respondents failed to rebut, a six-week delay in the issuance of a written opinion following Petitioner's merits hearing and a five-month delay in deciding the appeal. Dkt. 8 at 4. Respondents contend that the "[G]overnment has not intentionally caused any delay[,]" but courts have found this factor weighs in favor of the petitioner even when the delay is not the result of an intentional action on behalf of the Government. *See Martinez*, 2019 WL 5968089, at *10; *Chekhovskii v. Scott*, No. 2:25-CV-02550-TLF, 2026 WL 353265, at *5 (W.D. Wash. Feb. 9, 2026); *Djelassi*, 434 F. Supp. 3d at 931.

Here, any delays appear to have stemmed from the crowded dockets of the Immigration Court and BIA. "Although not the result of intentional action on behalf of government officials, this delay is attributable to the Government." *Djelassi*, 434 F. Supp. 3d at 931. Thus, the Court finds the fourth and fifth factors favor Petitioner. *Id.*; *Chekhovskii*, 2026 WL 353265, at *5.

//

//

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

5.      Likelihood of Final Order of Removal

Under the final *Banda* factor, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). Here, Respondents argue that "[i]t is unknown whether Petitioner will prevail in his [petition for review] before the Ninth Circuit." Dkt. 5 at 8. Yet, Petitioner is appealing the denial of his claim to asylum, which, if successful, would prevent Respondents from removing him at all. *See* Dkt. 5 at 7; *see, e.g., INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 n.6 (1987).

Petitioner argues that the only impediment to Petitioner receiving asylum is the CLP Rule, which has been vacated and lacks legal force. *See* Dkt. 1 ¶ 61; Dkt. 6-4 at 5 n.2; *see, e.g., Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 29 (9th Cir. 2025) (explaining that, where the district court vacated an action as unlawful, its effect was "that the agency refrain from enforcing it"). However, the Court does possess sufficient information at this juncture to determine whether Petitioner will ultimately prevail. Accordingly, the Court concludes the sixth *Banda* factor does not weigh in favor of either party.

6.      Weighing the Factors

In sum, five of the six *Banda* factors weigh in favor of granting Petitioner a bond hearing, and one of the factors is neutral. Notably, the most important factor—the length of detention— weighs in Petitioner's favor. *See Banda*, 385 F. Supp. 3d at 1118. Since five of the *Banda* factors favor Petitioner, the Court concludes that the *Banda* test as a whole favors Petitioner, and that his "continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide him with a bond hearing." *Id.* at 1120.

//

//

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

**B.      Appropriate Relief**

Having found Petitioner's detention has become unreasonable, the Court turns to the scope of habeas relief. In his Petition, Petitioner asks the Court to "order [his] release unless Respondents hold a custody hearing for him before an immigration judge within 14 days" or, in the alternative, "issue a Writ of Habeas Corpus and hold a hearing before this Court." Dkt. 1 at 19.

Courts in this District have ordinarily refused to order immediate release, finding that "[t]here is no authority" to support a claim that a petitioner "is entitled to an order of release." *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *9 (quoting *Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *8 (W.D. Wash. May 5, 2021)), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021); *see also Hong*, 2022 WL 1078627, at *7 (explaining that the remedy for prolonged detention is a bond hearing); *Pasillas v. ICE Field Off. Dir.*, No. 2:21- cv-681-RAJ, 2021 WL 8084206, at *7 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted*, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022) (granting bond hearing but not release).

Here, the Court concludes that the proper remedy is a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (clarifying that "the government should be held to a clear and convincing evidence standard of proof" in a bond hearing). Respondents contend that "Petitioner's request for a hearing with the burden on the Government by clear and convincing evidence is contrary to law[,]" *see* Dkt. 5 at 8, but this Court has affirmed that the clear-and-convincing-evidence standard applies in this context. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 585 U.S. 281 (2018); *see, e.g.*, *Banda*, 385 F. Supp. 3d at 1120–21 ("To detain a

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12

noncitizen for a prolonged period of time while removal proceedings are pending, due process requires the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing."); *Ali Haidari v. Scott*, No. C26-1655-KKE, 2026 WL 1628663, at *2 (W.D. Wash. June 5, 2026); *Kadel v. Bostock*, No. 2:26-CV-01608-DGE, 2026 WL 1601353, at *5 (W.D. Wash. June 4, 2026) (collecting cases).

## IV.    CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the petition for writ of habeas corpus (Dkt. 1) and **ORDERS** as follows:

(1)    Petitioner's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment;

(2)    Respondents **SHALL provide** Petitioner with an individualized bond hearing before an immigration judge **within fourteen days of this Order**— unless the hearing is continued at the Petitioner's request—at which the Government bears the burden of proof by clear and convincing evidence that Petitioner is a danger to the community or poses a risk of flight;

(3)    If a bond hearing is not provided within fourteen days of the date of this Order, or within the period of continuance requested by Petitioner, Respondents **SHALL release** Petitioner **no later than the fifteenth day after the date of this Order**, or the day following the period of continuance requested by Petitioner, subject to reasonable conditions of supervised release;[3] and

(4)    Respondents **SHALL file** a declaration with the Court confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's request for a continuance or his release by **August 14, 2026**.

---

[3] *See Kadel v. Bostock*, No. 2:26-cv-01608-DGE, 2026 WL 1601353, at *6 (W.D. Wash. June 4, 2026) (fashioning similar relief).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 13

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 30th day of July, 2026.

_____

Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 14